In the United States District Court
Southern District of Iowa

| | | |
|---|---|---|
| William Miller, | ) | |
| | ) | No. 4:13-cv-00161-JAJ-TJS |
| Plaintiff, | ) | |
| | ) | Amended Complaint and |
| v. | ) | Jury Demand |
| | ) | |
| | ) | |
| Elliott Aircraft Sales Inc. d/b/a Elliott Aviation, | ) | |
| and David Davidson d/b/a FA Aviation, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

William Miller's Response to Elliott's Motion to Dismiss

---

## Table of Contents

I.    Introduction and Issue ............................................................. 1

II.   Background ........................................................................... 2

    A.   In late 2009, Miller expressed interest in an airplane Elliott
        was selling and, after learning about the plane's history from
        Elliott, purchased it for $2,950,000 ............................................. 2

    B.   After receiving his plane from Elliott in early 2010, Miller
        discovered a number of things wrong with it, and eventually
        learned that it was involved in a crash, not the "static" incident
        Elliott described ........................................................................ 3

III.  Discussion ............................................................................. 5

    A.   Under Rule 12(b)(6), the Court must assume that every factual
        allegation in Miller's complaint is true, and grant Elliott's
        motion only if these facts could not plausibly entitle Miller
        to relief ..................................................................................... 5

    B.   Miller has properly alleged facts supportive of a fraud
        claim against Elliott ................................................................... 7

C.   Elliott cannot carry its burden to prove that the waiver
provision in the parties' contract renders Miller's fraud
claim implausible ........................................................................... 9

D.   Miller has properly alleged a claim under Iowa's
Consumer Fraud Act, which has a lower evidentiary burden
than common law fraud in Iowa .................................................. 12

E.   The express warranty waiver Elliott placed in the parties' contract
is unenforceable because it cannot be reasonably reconciled
with the express warranty created by the plane's logbook ........................ 15

F.   Miller's breach of contract claim contains a "short and plain
statement" of its damages due to Elliott's breach ..................................... 17

G.   Miller has sufficiently alleged a claim of mutual mistake ........................ 18

IV.   Conclusion ............................................................................................. 19

## I.  Introduction and Issue

For the purpose of Elliott's motion, the Court must assume the truth of the factual allegations in Miller's amended complaint.  In effect, then, the Court must assume that Elliott intentionally misled Miller about an airplane it was trying to sell him, used a false advertisement to market the plane, breached its contract after the parties' transaction, and refused to honor the plane's express warranty.  The essence of Elliott's motion is therefore a request for judicially sanctioned dishonesty—Elliott asks the Court to acquiesce in its deceit, fraud, and contractual breaches, and deny relief to the party it wronged.

But the approval of such conduct cannot be the function or effect of a 12(b)(6) motion.  Rather, the sufficiency of Miller's pleading hinges merely upon whether it contains a "short and plain" statement of allegations that form "facially plausible" causes of action.  The central issue before the Court is therefore singular and straightforward:

> **Pleading requirements under 12(b)(6) scrutiny** – Under federal law, a party need only make a short and plain statement of its claims that is facially plausible and sufficient to put a respondent on notice.  Here, Miller alleged that Elliott breached an enforceable contract and warranty, and intentionally engaged in deceptive and fraudulent conduct, all to Miller's detriment.  Since the Court must assume the truth of these allegations, should it dismiss Miller's claims in their entirety?

## II. Background

**A.  In late 2009, Miller expressed interest in an airplane Elliott was selling and, after learning about the plane's history from Elliott, purchased it for $2,950,000.**

In late 2009, Miller was in the market for purchasing an airplane.[1]  He hired a purchasing agent, David Davidson, in November of that year to assist him.[2]  And soon after his hire, Davidson located a 2007 Hawker airplane for sale by an Iowa company called Elliott Aviation.[3]  Elliott was in the business of buying and selling airplanes, and had the Hawker listed in one of its online advertisements.[4]

One of the pieces of information in Elliott's advertisement was related to the plane's repair history.  According to the ad, the plane was involved in a "static" incident that resulted in the replacement of its landing gear and one of its wings.[5]  Elliott represented to Miller that the plane suffered this damage while the plane was stationary.[6]  Specifically, it described this incident as one in which the plane had simply fallen of a jack.[7]

After learning this information from Elliott, Miller in December 2009 agreed to purchase the airplane, though he insisted that Elliott refurbish the plane's interior as

---

[1] Am. Compl. at ¶¶ 8, 11, and Ex. A.  (Court Doc. Nos. 25 and 25-1.)

[2] *Id.*

[3] Am. Compl. at ¶14.

[4] Am. Compl. at ¶¶ 13, 15.

[5] Am. Compl. at ¶ 16.

[6] Am. Compl. at ¶ 17.

[7] Am. Compl. at ¶ 18.

part of the transaction.[8]  These refurbishments included, among other things, cleaning, sanding, refinishing, painting, and replacing a number of the plane's interior features.[9] Elliott agreed that it would comply with Miller's request, and the parties signed a sales contract for the airplane on December 21, 2009 for $2,950,000.[10]

## B.   After receiving his plane from Elliott in early 2010, Miller discovered a number of things wrong with it, and eventually learned that it was involved in a crash, not the "static" incident Elliott described.

Within a year of receiving his plane from Elliott in spring 2010, Miller found a number of problems with his new purchase.[11]  The plane's anti-icing system, which was supposed to prevent the build-up of ice on the plane, did not function during flight.[12] Additionally, Miller found that the plane excessively "rolled" during flight, which required the pilot to take corrective measures to prevent the plane from rolling.[13]

After discovering these issues, Miller in 2011 learned about an even more severe problem—he found out that Elliott misrepresented the cause of the damage the plane sustained in 2007.[14]  Instead of falling off a jack while stationary, the plane was actually involved in a crash in the Caribbean.[15]  And in fact, Miller discovered that no

---

[8] Am. Compl. at ¶ 19.

[9] Am. Compl. at Ex. B; Decl. of Peter Carson at Ex. A (Court Doc. Nos. 25-2 and 32-2).

[10] *Id.*

[11] Am. Compl. at ¶¶ 21, 22.

[12] Am. Compl. at ¶ 23.

[13] Am. Compl. at ¶24.

[14] Am. Compl. at ¶¶ 25, 26, 47-49.

[15] Am. Compl. at ¶¶ 25-26.

document or record indicated or even claimed that the plane was damaged in a "static" incident other than Elliott's advertisement.[16]

But that was not the last discovery Miller made about the plane.  After learning of the crash, he discovered that some of the work Elliott was supposed to perform on the plane's interior was deficient.[17]  Because of the poor work, Miller had to make repairs to the plane for which he has been charged approximately $30,000.[18]

Miller told Elliott about all these problems, as well as his discovery of the plane's 2007 crash, before resorting to litigation.[19]  But Elliott would not agree to take responsibility for the plane's condition.[20]  It would not reimburse Miller for any of the expenses he incurred repairing the plane's interior, nor did it agree to pay for expenses he had incurred or would incur because of the anti-icing and rolling problems.[21]

Given that Miller would not have purchased the plane from Elliott had he known about the crash or the multiple severe mechanical problems it had, he filed suit against Elliott and Davidson on April 8, 2013.[22]

---

[16] Am. Compl. at ¶ 51

[17] Am. Compl. at ¶ 27.

[18] Am. Compl. at ¶ 28.

[19] Am. Compl. at ¶ 29.

[20] Am. Compl. at ¶¶ 30-31.

[21] Am. Compl. at ¶¶ 30-31.

[22] Am. Compl. at ¶ 57.  See Court Doc. No. 1 to confirm filing date of original complaint.

## III. Discussion

**A.      Under Rule 12(b)(6), the Court must assume that every factual allegation in Miller's complaint is true, and grant Elliott's motion only if these facts could not plausibly entitle Miller to relief.**

The standard by which courts adjudge motions to dismiss under Rule 12(b)(6) is characterized by liberality in favor of claimants. Given that a complaint need only give notice to a defendant by reciting "a short and plain statement" of a claim, the pleading must simply be facially plausible.[23]   In other words, a plaintiff's allegations need not "explicitly [state] each and every element of a claim," but must only "be enough to raise a right to relief above the speculative level . . . ."[24]

Under this standard of notice pleading, courts must review a complaint subject to a Rule 12(b)(6) motion "liberally in the light most favorable to the plaintiff," and "accept as true the plaintiff's well pleaded allegations."[25]   In so doing, a court's central task is to test the sufficiency of the plaintiff's complaint, not the veracity of its evidence—"[t]he issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim."[26]   As such, dismissal

---

[23] *Hussaini v. Gelita USA*, Inc., 749 F. Supp. 2d 909, 915 (N.D. Iowa 2010) (recognizing that a proper "complaint must allege 'only enough facts to state a claim to relief that is plausible on its face'").

[24] *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029, 1039 (N.D. Iowa 2011); *Salz v. Casey's Mktg. Co.*, No. 11-CV-3055-DEO, 2012 U.S. Dist. LEXIS 100399, *5 (N.D. Iowa July 19, 2012).

[25] *Cornerstone Consultants, Inc. v. Prod. Input Solutions, L.L.C.*, 789 F. Supp. 2d 1029, 1037 (N.D. Iowa 2011).   *See also Sec. Nat'l Bank v. Abbott Labs.*, No. 11-CV-4017-DEO, 2012 U.S. Dist. LEXIS 11929, *53 (N.D. Iowa Feb. 1, 2012) (noting that "in a motion to dismiss, a court is required to draw 'reasonable inferences in favor of the nonmoving party'").

[26] *Williams v. World Omni Fin. Corp.*, No. 4:10-CV-285, 2011 U.S. Dist. LEXIS 44815, *3 (E.D. Mo. Apr. 26, 2011).

is inappropriate if predicated solely upon "a judge's disbelief of a complaint's factual allegations" or opinion that a plaintiff's "recovery is very remote and unlikely."[27]

And though many litigants now move for relief under Rule 12(b)(6) in reliance upon the "heightened" pleading standards of *Iqbal* and *Twombly*, the liberality of federal notice pleading remains intact:

> Though attorneys, when their client's needs demand, are apt to portray the Supreme Court's rulings in *Twombly* as a profound change in motion to dismiss jurisprudence, a post-*Twombly* Supreme Court decision, *Erickson v. Pardus*, clearly reiterates the basic principles of liberal pleading in federal district courts. The [*Erickson*] Court noted,
>
>> Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief.' Specific facts are not necessary; the statement need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'[28]

Just as Rule 8's liberality survived *Iqbal* and *Twombly*, it also remains in force under Rule 9's particularity requirements.[29] It is true that Rule 9 requires plaintiffs to plead "the circumstances constituting fraud" by alleging details such as "the time, place and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby."[30]  But even if a fraud claim must include a "higher degree of notice" than other claims, "notice" is still the

---

[27] Id. at *2-3.

[28] *Sec. Nat'l Bank*, 2012 U.S. Dist. LEXIS 11929 at *13-14 n. 2 (*quoting Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007)).

[29] *Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 920 (8th Cir. 2001) (noting that "the two rules must be read in harmony").

[30] *Id.*

standard.[31]   So by requiring a plaintiff to allege the "circumstances" of the defendant's

fraud, Rule 9 "does not mute the general principles set out in Rule 8 . . . ."[32]

## B.   Miller has properly alleged facts supportive of a fraud claim against Elliott.

Plaintiffs in Iowa must allege a particular set of facts to establish a damages

claim for common law fraud:

> (1) misrepresentation or failure to disclose when under a legal duty to do so, (2) materiality, (3) scienter, (4) intent to deceive, (5) justifiable reliance, and (6) resulting injury or damage.[33]

A plaintiff must prove similar elements to receive equitable relief—like rescission—as

damages for another's fraud, though the burden of proof is lower.[34]

The necessary elements of fraud, for both money damages and equitable relief,

all appear in Miller's complaint.  He has alleged that Elliott misrepresented facts about

the plane before he agreed to purchase it by falsely stating that the plane fell off a

jack.[35]  Elliott omitted the fact of the plane's crash even though it, as a retail dealer of

planes, had superior knowledge of the plane's condition.[36]  And because Miller would

---

[31] *Id.* (noting that the "special nature of fraud does not necessitate anything other than notice of the claim").

[32] *Id.*

[33] *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, 354 F.3d 721, 725 (8th Cir. 2003).

[34] *Arthur v. Brick*, 565 N.W.2d 623, 625 (Iowa Ct. App. 1997) (recognizing that Iowa courts had "dispose[d] of the scienter and intent to deceive elements where a party claims only rescission and restitution").

[35] Am. Compl. at ¶¶ 15-18, 25-26, 47-49, 51.

[36] Am. Compl. at ¶¶ 15-18, 25-26, 47-49, 51, 55.

not have purchased the plane had he known about the crash, Elliott's misrepresentation and omission were material.[37]

He further alleged that Elliott made these representations intentionally and with knowledge of their falsehood, and did so to induce him to purchase the plane.[38] Given the circumstances of the transaction and Elliott's distinct representations about the plane's history, Miller was justified in relying upon Elliott.[39] And due to the multiple problems with the plane, the repairs he has had to make, and the fact that he now owns a plane he never would have purchased if Elliott had been honest, Miller has alleged that he has suffered injury due to Elliott's actions.[40]

In fulfilling the pleading requirements of fraud claims in Iowa, Miller has also given Elliott notice of his claim with enough particularity to satisfy Rule 9.  After hiring a purchasing agent in late 2009, Miller located the Hawker that Elliott was advertising online as having been involved in a 2007 "static" incident.   Elliott reiterated the contents of its advertisement by representing to Miller that this incident entailed only

---

[37] Am. Compl. at ¶ 57.  "Materiality has been found where a fact influences a person to enter into a transaction, where it deceives him or induces him to act, or where the transaction would not have occurred without it."  *Smith v. Peterson*, 282 N.W.2d 761, 765 (Iowa Ct. App. 1979) (noting that "[t]he important point [for materiality] is that [a party] entered into a transaction they otherwise would not have entered into because of the" other party's fraud).

[38] Am. Compl. at ¶ 53.

[39] Am. Compl. at ¶ 56.  *See Peterson*, 282 N.W.2d at 765-66.  In *Peterson*, the court found that if one party makes "distinct representations" in connection with a transaction, "the other party has a right to rely on them without further inquiry even though circumstances are present which might raise inconsistent inferences."  *Id.* (reasoning that "where one party inferentially induces another party to forego further investigation, and the other party relies on the first party's representations, the defrauded party's claim is not barred because he failed to use due diligence to discover the true facts").

[40] Am. Compl. at ¶¶ 31, 57-58.

damage that resulted from the plane falling of a jack while stationary.   Then, in December 2009, Miller agreed to purchase the plane for nearly $3,000,0000.

These details adequately state the "circumstances" that constitute Elliott's fraud and give notice of the particulars of Miller's allegations.   Miller has described the contents of the misrepresentation and omission, identified Elliott as the entity that made them, and noted that it did so in a particular time period.[41]   Elliott therefore has adequate notice of Miller's claim in satisfaction of Rules 8 and 9.

## C.   Elliott cannot carry its burden to prove that the waiver provision in the parties' contract renders Miller's fraud claim implausible.

When a plaintiff has a claim related to a defendant's misrepresentations, the defendant may assert a number of affirmative defenses, including that of waiver.  This is especially prevalent where the parties were engaged in an arm's length business transaction, such as the one that occurred in the present litigation.   In those circumstances, a defendant may try to point to language in a contract in which the plaintiff agreed to disclaim all the defendant's representations.

But a defendant may not so easily contract around fraud.   For example, in *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*, the Eighth Circuit Court of Appeals had to determine whether a fraud claim between two banks could survive a

---

[41] *See Sec. Nat'l Bank*, 2012 U.S. Dist. LEXIS 11929 at *61-63 (noting that a plaintiff suing a company need only identify the company as the speaker of the misrepresentation, not the specific representative of the company, and that identification of a "false or misleading" statement in an advertisement—even one not discovered until after the injury—was sufficient to describe the contents of the alleged fraud under Rule 9).   The Court should further note that Miller is unaware of what "further factual enhancement" Rule 9 requires of his use of the word "crash" in his amended complaint.   *See* Elliott's Brief at 10 (Court Doc. No. 32-1 at 11).   The word "crash" is common and used in plain speech to mean "to break violently" or "to damage (an airplane) in landing." http://www.merriam-webster.com/dictionary/crash (last accessed July 1, 2013).   That Miller did not define it in his complaint—just as he did not define other common terms germane to his claim, such as "airplane," "advertisement," "purchase," and "false"—does not render his statements "conclusory" or improper under Rule 9.

general disclaimer in the banks' contract.  In that case, Northwest Bank agreed to lend money to a third party only after FINB (the defendant bank) supplied it with certain financial information.[42]   Once Northwest reviewed this information from FINB, it executed a "loan participation agreement" that contained the following broad waiver provision:

> Purchaser [Northwest] acknowledges that it has made an independent investigation of the Loan, and has satisfied itself with respect to the credit standing of any Obligor of the Loan, the value of any security for the Loan, the validity and enforceability of the Loan agreement, the Promissory Note and any guaranty and security and all other matters in connection with the Loan.  Purchaser acknowledges that it is not relying upon Seller's [FINB] judgment, and that Seller has made no warranty of any kind, express or implied, in connection with the Loan or any of the foregoing.   Unless otherwise agreed, Seller makes no warranties or representations regarding the legality, perfection, enforceability, or priority of any security interests, mortgages, guaranties, or similar documents issued in connection with the Loan.[43]

After the third party declared bankruptcy and defaulted on the loan, Northwest sued FINB for a number of things, including fraud both before and after the parties signed the agreement.[44]   FINB filed a motion for summary judgment, arguing that it did not induce Northwest's execution of the agreement via fraud, and that Northwest failed to exercise due diligence before closing the transaction.[45]   The trial court agreed, citing the waiver provision in the parties' contract and the fact that Northwest, as a

---

[42] *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank* 354 F.3d 721, 723 (8th Cir. 2003).

[43] *Id.* at 725-26.

[44] *Id.* at 723, 725.

[45] *Id.* at 724.

"sophisticated lender," could not claim "it was fraudulently induced to enter into the contract by the very representation it has [contractually] disclaimed."[46]

But upon reviewing the district court's decision, the appellate court found that Iowa law would not condone alleged fraudulent conduct in this manner.  For when "there is evidence of fraudulent misrepresentations in the inception of a contract[,] such misrepresentations can be the basis for either an action to rescind or for damages, *despite the limiting provisions of a contract*."[47]  And this was true even when the parties were both "sophisticated" business entities able to conduct their own independent investigation before signing the contract.[48]

Iowa law required this because fraud inducing another to enter a contract "precedes the formation of the contract, and . . . to give preclusive effect [to a waiver] contained therein would allow a party to bind the defrauded party . . . through the use of a boilerplate disclaimer."[49]  That result conflicts with Iowa's public policy that "sanctions the avoidance of a promise obtained by deceit [and] strikes down all attempts to circumvent that policy by means of contractual devices."[50]  The *Northwest* court therefore reversed the trial court's grant of summary judgment, and remanded the case for trial on the issue of FINB's pre-closing fraud.

---

[46] *Id.*

[47] *Northwest Bank*, 354 F.3d at 726 (quoting *Hall v. Crow*, 34 N.W.2d 195, 199 (Iowa 1948)) (emphasis in original).

[48] *Id.*

[49] *Id.*

[50] *Id.*

In the case before this Court, Miller's allegations against Elliott are similar.  He and Elliott engaged in the negotiation of an arm's length transaction, during which Elliott made false statements.   Elliott did this so that Miller would rely upon misinformation in deciding whether to purchase the plane.  And, like the defendant in *Northwest Bank*, Elliott included a clause in its contract in an attempt to escape liability for its misrepresentations.

But, as the court in *Northwest Bank* noted, Iowa law renders "contractual disclaimers . . . ineffective to bar a plaintiff from asserting a claim for fraudulent inducement."[51]  Elliott cannot lie to encourage another to enter into an agreement, and then in that very agreement use a "boilerplate disclaimer" to bind the "defrauded party" nonetheless.[52]

## D.    Miller has properly alleged a claim under Iowa's Consumer Fraud Act, which has a lower evidentiary burden than common law fraud in Iowa.

The Iowa Consumer Fraud Act broadly protects consumers from deceptive and unfair business practices.  It does this by prohibiting businesses from using, among other things, "unfair practices," "deception," "fraud," "false pretense,"

---

[51] *Id.* at 726.

[52] *Id.* Elliott in its brief referred to another Eighth Circuit case, *Mitec Partners, LLC v. U.S. Bank Nat. Assoc.*, 605 F.3d 617 (8th Cir. 2010) in support of its argument that the parties' contractual waiver absolves it of any charge of fraud.  Elliott's Brief at 10-11 (Court Doc. No. 32-1 at 11-12).  But the court in *Mitec* went out of its way to distinguish its case from the dispute in *Northwest Bank* in a material way—the alleged misrepresentation in *Mitec* occurred in a letter of intent that was "expressly made . . . subject to a final written agreement" that contained the disclaimer in question. *Mitec*, 605 F.3d at 620, 623-24 (noting that the letter of intent stated that it was "intended to set forth the general terms of the [transaction], with final definitive terms and conditions to be set forth in an Agreement" to be signed later).  In fact, the *Mitec* court even recognized as still generally applicable the tenant of Iowa law central to *Northwest Bank*.  *Id.* at 624 (noting that "contractual disclaimers are ineffective to bar a plaintiff from asserting a claim for fraudulent inducement" in Iowa).  *Mitec* therefore did nothing to condemn or weaken the *Northwest Bank* court's articulation of Iowa law on this subject.

"misrepresentation," or "concealment" related to "the advertisement, sale, or lease of consumer merchandise . . . ."[53]   But this statute is not "merely a codification of common-law fraud."[54]   Rather, it offers "broader protection" than the common law and requires a lower burden of proof—under the Act, plaintiffs do not have to prove that they relied upon the defendant's conduct or that they suffered damages.[55]

In this case, Miller's allegations fit well under the rubric of the Act.   In advertising a plane it had for sale, Elliott falsely stated that the plane was damaged in a "static" incident.   It furthered this misrepresentation by concocting a story about how the plane fell off a jack while it was stationary, and sharing this with Miller in connection with the sale of the plane.   Miller, who would not have purchased the plane if he had known the truth about its crash, thereafter consummated the sale with Elliott and ended up with a malfunctioning plane.

But Elliott again insists that this is not enough.   Even though the Court must make all reasonable inferences in Miller's favor and decide only whether he is "entitled to present evidence in support of his claim," Elliott argues that Miller cannot plausibly make a Consumer Fraud allegation.   It believes this principally for two reasons:   (1) Miller has apparently not shown how Elliott's fraud related to a "material" fact; and (2) Miller has not met a "burden" he has under the Consumer Fraud Act to establish that his plane was used for mostly personal purposes.

But these arguments are problematic for at least two reasons in light of Miller's simple duty to give Elliott notice of his allegations.   First, as Miller has already

---

[53] Iowa Code § 714H.3.

[54] *State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989).

[55] *Id.*

explained, he would not have purchased the plane if he had known the truth about the crash. This allegation specifically satisfies Iowa law regarding materiality.[56]

Second, by alleging that the plane he purchased is "consumer merchandise" as that term is defined in the Act, Miller has met his minimal burden to put Elliott on notice of his claim. The term "consumer merchandise" is plainly defined as "merchandise offered for sale or lease, or sold or leased, primarily for personal, family, or household purposes."[57] So by stating that his plane is in fact "consumer merchandise," he has by definition stated that he uses it primarily for personal purposes.

But even aside from this fact, the burden Elliott seeks to place upon Miller at this stage goes well beyond notice under Rules 8 and 9. For if Miller must in his complaint allege more than that his plane is "consumer merchandise," must he also list every fact that satisfies the multiple definitions in the Act? For example, must he affirmatively state that the plane is in fact an "object," "ware," or "good," to ensure that he has properly alleged that it is "merchandise" under the Act?[58] Does he run afoul of traditional notice pleading requirements if he does not state that he is a "natural person," and therefore a "consumer" under the Act?[59] Must his complaint be dismissed because he did not allege that Elliott's online advertisement for the plane was an "attempt by publication, dissemination, solicitation, or circulation to induce directly or

---

[56] *Smith*, 282 N.W.2d at 765 (Iowa Ct. App. 1979) (noting that "[m]ateriality has been found where a fact influences a person to enter into a transaction, where it deceives him or induces him to act, or where the transaction would not have occurred without it").

[57] Iowa Code § 714H.2(4).

[58] *Id.* at §§ 714H.2(6), 714.16(1)(i) (defining "merchandise").

[59] *Id.* at § 714H.2(3) (defining "consumer").

indirectly any person to enter into any obligation or acquire any title or interest in any merchandise?"[60]

The severe formality of a pleading standard that would require such detail goes well beyond the scope of the current Federal Rules of Civil Procedure.  Elliott is certainly permitted to challenge Miller's claim under the Consumer Fraud Act, as well as his ability to meet its requirements and definitions.  But, unless it can show that Miller's claim is facially implausible even when viewed in a favorable light, it must wait to do so in discovery.

**E.    The express warranty waiver Elliott placed in the parties' contract is unenforceable because it cannot be reasonably reconciled with the express warranty created by the plane's logbook.**

Under Iowa law, an express warranty does not need to use specific terms of art or mirror the form of a traditional "warranty."  Rather, a seller creates an express warranty by "any affirmation of fact or promise made . . . which relates to the goods and becomes part of the basis of the bargain" with the purchaser, or by making a "description of the goods . . . part of the basis of the bargain . . . ."[61]

Given the breadth of materials that may constitute an express warranty in Iowa, courts have extended warranty protections to maintenance logbooks that accompany airplanes.  In *Limited Flying Club v. Wood*, for example, the court noted that a plane's logbook contained "repair and inspection history" and "certificates of airworthiness."[62]

---

[60] *Id.* at §§ 714H.2(2), 714.16(1)(a) (defining "advertisement").

[61] Iowa Code § 554.2313(1).

[62] *Limited Flying Club v. Wood*, 632 F.2d 51, 56 (8th Cir. 1980).

The proof showed that the purchaser of the plane relied upon the contents of the logbook, and duly the court found that it constituted an express warranty.[63]

The same type of logbook at issue in *Limited Flying Club* was provided to Miller by Elliott in connection with the purchase of his plane. And indeed, among other things, it contained certifications of airworthiness.[64] Under *Limited Flying Club*, then, the logbook constitutes an express warranty Elliott is obligated to honor.

Elliott argues, however, that any obligation it may have had under the express warranty of the logbook was, like its other wrongdoing, vitiated by the boilerplate disclaimer in the parties' contract. And indeed the disclaimer purports to act as a waiver of all express and implied warranties, representations, and guarantees about the plane's condition or airworthiness.

But this argument does not account for the fact that Iowa law "provides that express warranties and disclaimers should be read as consistent when possible and 'negation or limitation' of an express warranty 'is inoperative to the extent that such construction is unreasonable.'"[65] A construction of a disclaimer and warranty is "unreasonable," in turn, where it creates an intrinsic contractual contradiction:

> If the factfinder determines that a seller's statement created an express warranty, words purportedly disclaiming that warranty will still be "inoperative," for the disclaiming language is inherently inconsistent. Thus a seller who explicitly "warrants" or "guarantees" that a car is

---

[63] *Id.* (finding that by giving the logbook to the plaintiff as part of the transaction, the defendant "expressly warranted the accuracy of [the logbook's] description—the airworthiness of the plane— and is liable for damages arising from the breach of that warranty"). The court in *Limited Flying Club* went on to hold that the defendant's broad "as-is" provision did not trump the logbook's express warranties. *Limited Flying Club*, 632 F.2d at 56-57.

[64] Am. Compl. at ¶¶ 75-76.

[65] *Sec. Nat'l Bank*, 2012 U.S. Dist. LEXIS 11929 at *50.

without defects may not set up a disclaimer of express warranties when sued for the cost of repairing the clutch.[66]

But in this case, that is exactly what Elliott contends.  The logbook contained information about the plane's condition and a certification of airworthiness, but the disclaimer waived warranties related to the plane's condition and airworthiness. Therefore, Elliott argues, the warranties in the logbook have no effect.

Elliott's proffered construction of the logbook warranty and the disclaimer is therefore not reasonable, and is certainly not enough to require the Court to dismiss Miller's claim as facially implausible.

## F. Miller's breach of contract claim contains a "short and plain statement" of its damages due to Elliott's breach.

Elliott's only qualm with Miller's breach of contract claim is that the allegation of damages—that the work Elliott performed on the plane "damaged the interior of the plane" and caused Miller "economic injuries"—is insufficient.  Elliott does not claim that this allegation omits a requisite connection between the breach and the injury, but rather argues that the disclaimer provision in the contract forecloses Miller's potential recovery.  That clause disclaims Elliott's liability for "consequential damages," so, Elliott concludes, Miller cannot state a claim for breach of contract.[67]

Though Elliott's reference to the contractual disclaimer is once again accurate, the clause does not render Miller's claim implausible under Rule 8.  As Elliott acknowledges in its brief, disclaimers of consequential damages are prima facie

---

[66] James J. White & Robert S. Summers, *Uniform Commercial Code*, § 12-2 (4th ed. 1995) (recognizing that the spirit of the 1952 version of the UCC—that provided that "if the agreement creates an express warranty, words disclaiming it are inoperative"—remained generally unchanged despite the Code's revision).

[67] Elliott's Brief at 19-20 (Court Doc. No. 32-1 at 20-21).

unenforceable if they relate to consumer goods.[68]   Given that the definition of "consumer goods" in Iowa's UCC is nearly identical to the definition of "consumer merchandise" in the Consumer Fraud Act—both simply require that the goods be used "primarily for personal, family, or household purposes"—Miller's allegations state that the plane is indeed a "consumer good."   And as such, the damages limitation in the parties' contract is prima facie unconscionable.[69]   Miller's allegations therefore do set forth a "short and plain statement" of the damages element of his breach of contract claim, and dismissal is inappropriate.

## G.   Miller has sufficiently alleged a claim of mutual mistake.

Under Iowa law, when two parties execute an agreement and are "mutual[ly] mistake[n] . . . as to their relative and respective rights, either is entitled to have it set aside."[70]   This is the case because when the parties are mistaken about a material portion of a contract, there was no effective meeting of the minds.[71]

As an alternative to its fraud claim against Elliott, Miller has alleged facts in accordance with this doctrine.   He has claimed that the parties were mutually mistaken about the plane's repair and damage history.   And given that the subject of this mistake was material to the transaction, as Miller has previously explained, the parties' contract should be rescinded.

---

[68] Iowa Code § 554.2719(3) (declaring such disclaimers prima facie unconscionable, and therefore unenforceable).

[69] *See* Iowa Code §§ 554.9102(w) and 714H.2(4).

[70] *Harding v. Willie*, 458 N.W.2d 612, 614 (Iowa Ct. App. 1990).

[71] *Id.*

Though Elliott argues that this claim is implausible for the same reason that Miller's other claims should fail—the disclaimer provision in the parties' contract impliedly forecloses the possibility of mistake—this position is problematic for at least two reasons. First, Elliott has not cited to any binding case law from Iowa or the Eighth Circuit that requires such a conclusion. While Iowa has indeed accepted some of the general risk-allocation principles Elliott cited in its brief, Miller is not aware of any authoritative precedent dictating that a disclaimer like the one at issue here definitively—and as a matter of law—allocates the risk of mistake to the buyer of merchandise.

Second, Elliott overlooks the fact that under the very law it cites, the Court has the ability to allocate the risk of mistake to either party on the ground that it is reasonable in the circumstances to do so.[72] In this case, Elliott is a professional retailer of aircraft and Miller is an individual customer. Given Elliott's superiior position, and the fact that the mistake is due to an affirmative statement it made about the plane, the Court could very well decide to allocate the risk of mistake to Elliott instead of Miller.

## IV. Conclusion

Miller is required by law to craft a pleading that, aside from establishing jurisdiction, essentially accomplishes one thing—to place Elliott on notice that it is being sued for causing legally cognizable harm. Here, Miller has done precisely that. Elliott falsely stated a number of things to induce Miller into doing business on its terms, and even concocted a story about how the airplane Miller was looking at was

---

[72] *Davenport Bank & Trust Co. v. State Cent. Bank*, 485 N.W.2d 476, 480 (Iowa 1992) (noting that a court may allocate the risk of mistake "on the ground that it is reasonable in the circumstances to do so").

damaged.  And as Miller found out after purchasing the plane from Elliott, it had not only engaged in fraud, but even breached the contract it signed and the warranty it made, causing Miller to suffer severe economic injuries.

These allegations more than satisfy Miller's pleading requirements, and adequately give notice to Elliott of the conduct for which it is being sued.  Elliott is free to disbelieve and disagree with these allegations, but at this procedural stage, such disbelief or disagreement cannot take from Miller the opportunity to prove his claims.  The Court should therefore deny Elliott's motion in its entirety, and allow the parties the opportunity to move forward with this litigation.

Respectfully submitted,

/s/ Frederick B. Anderson
Frederick B. Anderson AT0000467
5015 Grand Ridge Drive, Suite 100
West Des Moines, Iowa  50265-5749
Telephone:  (515) 223-4567
Fax:  (515) 223-8887
Email:  anderson@hudsonlaw.net

/s/ R. Jonathan Guthrie
Gary R. Patrick, TN BPR No. 001941
R. Jonathan Guthrie, TN BPR No. 020762
Patrick, Beard, Schulman & Jacoway, P.C.
537 Market Street, Suite 202
Chattanooga, Tennessee 37402-1240
Telephone: (423) 756-7117
Fax: (423) 267-5032
Email: gpatrick@pbsjlaw.com
Email: jguthrie@pbsjlaw.com

## Certificate of Service

I hereby certify that I filed this document with the Clerk of Court using the CM/ECF system, which will automatically serve all counsel of record in this litigation.

/s/ R. Jonathan Guthrie
R. Jonathan Guthrie