**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA**

| | |
|---|---|
| WILLIAM MILLER, | Case No.:  4:13-cv-00161-JAJ-TJS |
| Plaintiff, | |
| v. | |
| ELLIOTT AVIATION AIRCRAFT SALES INC. d/b/a ELLIOTT AVIATION, and DAVID DAVIDSON d/b/a FA AVIATION, | |
| Defendants. | |

<u>**DEFENDANT ELLIOTT AVIATION AIRCRAFT SALES INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS**</u>

<u>TABLE OF CONTENTS</u>

Argument ........................................................................................................................1

  I.   Miller Fails to State a Claim with Respect to Fraud ........................................1

  II.  Miller Fails to Allege Essential Facts under Iowa's Consumer Fraud Act, and His Claim Must Be Dismissed ...............................................................................4

  III. Miller Has Failed to State a Claim for Breach of Express Warranty...............4

Conclusion .....................................................................................................................5

## ARGUMENT

## I.     MILLER FAILS TO STATE A CLAIM WITH RESPECT TO FRAUD.

### A.     Miller's Cites to an Outdated and Incorrect Standard with Respect to the Assessment of his Fraud Claim.

In his response to Elliott's motion on the issue of fraudulent inducement, Plaintiff William Miller ("Miller") relies almost exclusively on the 2003 case of *Northwest Bank & Trust Co. v. First Illinois Nat'l Bank*, 354 F.3d 721 (8th Cir. 2003).   *Northwest Bank*, as noted by Miller, involved a dispute between two banks in which the court found that the contractual disclaimer signed by the plaintiff, prior to the transaction, was ineffective to bar it from asserting a claim for fraudulent inducement.   Based on this ruling, Miller essentially argues that the contractual disclaimers and merger clause contained in the Sales Agreement are irrelevant and his fraud claim must therefore be allowed to proceed.   However, Miller's reliance on *Northwest Bank* is unavailing.   This is because seven years after its ruling in *Northwest Bank,* in the 2010 case of *Mitec Partners, LLC v. U.S. Bank Nat'l Assoc.*, 605 F.3d 617 (8th Cir. 2010), the 8th Circuit revisited the issues at the core of *Northwest Bank*, and clarified its position.

In *Mitec*, as in *Northwest Bank*, the plaintiff entered into an agreement with the defendant in which the defendant disclaimed all representations and warranties.  *Id*., at 621.  The plaintiff in *Mitec*, as in *Northwest Bank*, also acknowledged in its contract with the defendant that it was not relying on the bank.   After the deal went sour, the plaintiff in *Mitec* (as did the plaintiff in *Northwest Bank*) sued, alleging that it was fraudulently induced to enter into the agreement based on the defendant's failure to disclose certain key, material facts related to the transaction.

Unlike in *Northwest Bank*, however, the court in *Mitec* affirmed the lower court's dismissal of the plaintiff's fraud claims.   It did so on the grounds that the alleged fraudulent misrepresentation "was made in a document that was itself subject to a subsequent, integrated

contract that contained multiple, unambiguous disclaimers." *Mitec*, 605 F.3d at 624.  The court was also persuaded by the fact that the plaintiff "had access to the relevant information and many ways to determine that the unconcealed representation was untrue before the closing," but chose to "blindly rel[y] on [the defendant's] alleged misrepresentation." *Id.*, at 623.

Based on *Mitec*, it is now clear that the blanket holding from *Northwest Bank*—that contractual disclaimers signed by a plaintiff, prior to a transaction, are automatically ineffective to bar it from asserting a claim for fraudulent inducement—is no longer the relevant standard in Iowa as interpreted by the 8th Circuit.  Instead, the rule, as set forth in *Mitec*, is more balanced and practical.  Specifically, the rule after *Mitec* is as follows:  if a misrepresentation "was made in a document that was itself subject to a subsequent, integrated contract that contained multiple, unambiguous disclaimers," and if the plaintiff "had access to the relevant information and many ways to determine that the unconcealed representation was untrue before the closing," then the subsequent, integrated contract can render the fraudulent inducement claim implausible.[1]

Here, even assuming the truth of all of Miller's factual allegations (but not the legal conclusions), it is clear that Miller's fraud claim fits clearly within the outlines of the rule announced in *Mitec* and must be dismissed.  The alleged misrepresentation, by Miller's own assertion, was made in a document (the advertisement) that specifically states that the "AIRCRAFT [IS] SUBJECT TO PRIOR INSPECTION AND/OR REMOVAL FROM MARKET [AND] ALL SPECIFICATIONS AND REPRESENTATIONS OF AIRCRAFT SUBJECT TO VERIFICATION BY BUYER BEFORE PURCHASE."  (See Am. Compl., Ex. B, at 1-2.)  Moreover, the Sales Agreement, like the contract in *Mitec*, contains an

---

[1] This conclusion is also consistent with the 2003 Illinois case of *Go For It, Inc. v. Aircraft Sales Corp.*, No. 02 C 6158, 2003 WL 21504600, *1 (N.D. Ill. 2003), a case which is virtually on all fours with the instant action.  Miller does not even mention, let alone analyze, *Go For It,* in his opposition Brief.

integration/merger clause, as well as multiple, unambiguous disclaimers, including explicit and conspicuous provisions disclaiming all warranties, express or implied, as well as fitness for a particular purpose, airworthiness, and condition of the aircraft.  (Am. Compl. at ¶ 19, Sales agreement at 2.)  Further, the documents attached by Miller to his Amended Complaint unequivocally show that he had the right to, and in fact did, inspect the Aircraft prior to accepting it, and thus had "access to the relevant information and many ways to determine that the unconcealed representation was untrue before the closing."  (Am. Compl. at ¶ 19, Certificate of Acceptance, attached to Sales Agreement (ECF 1-2, at 9); see also Executed Certificate of Acceptance, attached to Declaration of Peter A. T. Carlson (ECF 32-2, at 7.)  Based on the holding in *Mitec,* and the allegations in Miller's Amended Complaint, it is clear that Miller has failed to allege facts sufficient to make a plausible claim with respect to fraud.

### B. Miller's Fraud Claim Also Fails to Allege Facts Sufficient to Establish a Plausible Reason Showing the Materiality of the Alleged Misrepresentation.

In addition to citing the incorrect standard for assessing his fraud claim, Miller has not met the *Iqbal/Twombly* plausibility threshold with respect to the element of materiality.  Indeed, the only explanation Miller makes setting forth how the alleged misrepresentation is material is circular and self-serving.  He suggests that the representation of the incident as "static" was material because he "would not have purchased the plane had he known about the crash."  Miller Brief, at 7-8.  Of course, saying something was material does not establish that, in fact, it was material.   Nor does saying he would not have purchased the Aircraft explain why the representation was actually material.  It isn't enough to say it was "material," he must allege why it was material.  Nothing in Miller's brief, or in his Complaint, explains, or even discusses, why the description of the incident as "static," as opposed to a "crash" would be material to Miller in any way, particularly when he also admits that he was advised of the "incident" prior to the

purchase, and admits he knew the incident resulted in the replacement of the Aircraft's landing gear and one of its wings.  His rote reliance on this generic assertion is inadequate and he thus fails to state a claim.

## II.   MILLER FAILS TO ALLEGE ESSENTIAL FACTS UNDER IOWA'S CONSUMER FRAUD ACT, AND HIS CLAIM MUST BE DISMISSED.

Miller admits (as he must) that the Iowa Consumer Fraud Act only applies if the Aircraft he purchased is determined to be "consumer merchandise," as that term is defined under the Act. (Miller Brief, at 14.)  Remarkably, however, Miller continues to fail to allege any of the actual facts that would be necessary to show that the plane he purchased was "consumer merchandise." A simple factual allegation that he purchased the plane "primarily for personal, family or household purposes," would be all that is needed to meet his legal requirements in this regard. However, Miller did not make this mere allegation in his Amended Complaint, and he has failed to affirmatively assert as much in his response to the motion to dismiss.  It is not clear why he has taken this approach, but for whatever reason Miller has chosen to stand on the purely legal allegation that the plane constitutes "consumer merchandise."   Under the *Iqball/Twombly* standard, naked assertions of legal conclusions do not meet the pleading requirements of Rule 8. Indeed, as the Supreme Court noted in *Iqball*, legal allegations are to be "disregarded" in the court's analysis as to whether the plaintiff has met his Rule 8 requirements.  *See Ashcroft v. Iqball*, 129 S.Ct. 1937, 1949-50 (2009).  As such, Miller's legal allegation that the Aircraft is consumer merchandise is inadequate and he has clearly not met his Rule 8 requirements.

## III.   MILLER HAS FAILED TO STATE A CLAIM FOR BREACH OF EXPRESS WARRANTY.

In response to Elliott's motion to dismiss Miller's breach of warranty claim, Miller correctly notes that, under Iowa law, a warranty limitation may be inoperative if it negates an express warranty and enforcement of the limitation would be "unreasonable."  Iowa Code §

554.2316(1).  However, Miller fails to offer any reason why the warranty limitation here should be considered "unreasonable."  Moreover, in light of *Hayes v. Bering Sea Reindeer Products*, 983 P.2d 1280, 1286 (Alaska 1999), cited in Elliott's it is clear that it is not "unreasonable."  See *Hayes*, 983 P.2d at 1286.  As such, Miller's breach of warranty claims should be dismissed.[2]

## CONCLUSION

For the foregoing reasons, Elliott requests that the Court grant its Motion to Dismiss.[3]

**FAFINSKI MARK & JOHNSON, P.A.**

Dated:  July 21, 2013

By:  s/Patrick J. Rooney
Patrick J. Rooney (MN #198274) (*Pro Hac Vice*)
Peter A. T. Carlson (MN #350448) (*Pro Hac Vice*)
775 Prairie Center Drive, Suite 400
Eden Prairie, MN  55344
Telephone:  952.995.9500
Facsimile:  952.995.9577
patrick.rooney@fmjlaw.com
peter.carlson@fmjlaw.com

and

Michael P. Byrne AT0001397
Lane & Waterman LLP
220 N. Main St., Ste. 600
Davenport, IA  52801
Telephone:  563-324-3246
Facsimile:  563-324-1616
mbyrne@l-wlaw.com

**ATTORNEYS FOR DEFENDANT ELLIOTT AVIATION AIRCRAFT SALES INC.**

---

[2] As noted in Elliott's opening Brief, *Hayes* involved the sale of an Aircraft pursuant to a sales agreement with express warranty limitations.  As here, the plaintiff in *Hayes* argued that the seller made express warranties through certificates of airworthiness before the sale, and the defendant argued that such warranties, if they existed, were negated by the specific language of the sales agreement for the Aircraft.  *Id.*, at 1284-1286.  Based on the same UCC provision (2-316) at issue here, the Alaska Supreme Court held that that seller's "clear, forceful, specific disclaimer" in the aircraft sales contract was "conspicuous, clearly written" and barred the aircraft's buyer's breach of express warranty claim.  *Id.*, at 1286.

[3] Elliott stands by its arguments, as set forth in its original brief, with respect to plaintiff's breach of contract and rescission claims.