**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | | |
|---|---|---|
| WILLIAM MILLER,<br>　　　　　　Plaintiff, | | No. 4:13-cv-00161-JAJ |
| vs. | | |
| ELLIOTT AVIATION AIRCRAFT<br>SALES INC. d/b/a ELLIOTT<br>AVIATION; and DAVID DAVIDSON<br>d/b/a/ FA AVIATION<br>　　　　　　Defendants. | | **ORDER** |

This matter comes before the Court pursuant to Defendant Elliott Aviation's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) filed on June 26, 2013. [Dkt No. 32]. Plaintiff filed a response to the Motion to Dismiss on July 12, 2013. [Dkt. No. 33]. Defendants filed a response on July 21, 2013. [Dkt. No. 34]. The Defendant's Motion to Dismiss is DENIED in part and GRANTED in part.

## I. INTRODUCTION

This action arises from the sale of an airplane.  The Plaintiff claims that he was fraudulently induced to purchase the aircraft, alleging that, while the Defendant disclosed previous damage to the airplane—specifically, that damage occurred when the airplane fell off a jack—the airplane had instead been involved in a crash that substantially reduced the value of the aircraft. Plaintiff brings suit against the Defendant claiming: (1) breach of contract; (2) fraud; (3) fraudulent misrepresentation; (4) common-law fraud; and (5) a violation of the Iowa Consumer Fraud Act.

In response, the Defendant contends that the Plaintiff is a sophisticated purchaser who was assisted by an expert who independently inspected the airplane. After the Plaintiff's expert concluded that the airplane was fairly valued, the Plaintiff signed a sales contract disclaiming all warranties and stating that the Plaintiff did not rely on any representations made by the seller concerning the airworthiness of the airplane.   The primary question presented to the Court is whether the sales contract precludes this action for breach of contract and fraud.

1

## II. Factual Background

The present dispute arises over the sale of a private aircraft. The Plaintiff in the instant case, William Miller ("Miller"), purchased the aircraft from Defendant, Elliott Aviation Aircraft Sales Inc.  ("Elliott Aviation"), pursuant to advice he received from Defendant Davidson. Miller is a resident of Ft. Lauderdale, Florida. [Dkt. No. 25 ¶ 1]. Defendant Elliott Aviation is an Iowa corporation in the business of purchasing and selling aircraft with its principal place of business in Davenport, Iowa. [*Id.* at ¶ 2]. Defendant Davidson owns and operates an unincorporated sole proprietorship that operates under the name of FA Aviation. [*Id.* at ¶ 3]. Davidson resides in Williamson, Georgia. *Id.*

In 2009, Miller contracted with Davidson for assistance in evaluating and purchasing a jet aircraft manufactured by Beechcraft. [*Id.* at ¶ 8]. Davidson was hired due to his expertise with Beechcraft's line. Defendant characterizes the agreement between Davidson and Miller as one where Davidson "was engaged to provide Miller with market and historical research, advice about what aircrafts were 'viable options' for purchase, negotiate a purchase price, select the 'facility for conducting the pre-purchase inspection,' participate in pre-purchase inspection, and to provide the 'final purchase recommendation.'" [Dkt. No. 32 at ¶ 4]. Miller agreed to pay Davidson $50,000 for these services.

In January of 2009, Plaintiff purchased a used Hawkeye Beechcraft airplane from Elliott Aviation for $2,950,000. [Dkt. No. 32 at ¶ 2]. Prior to purchasing the aircraft, Plaintiff viewed an advertisement placed by Elliott Aviation that claimed the aircraft was in a static accident in 2007. [Dkt. No. 25 at ¶ 15–16]. Plaintiff alleges that Elliott Aviation described the aircraft as having sustained damage while stationary. [*Id.* at ¶ 17]. Elliott Aviation reportedly told the Plaintiff that the plane was repaired after it fell off a jack. [*Id.* at ¶ 18].

Under the terms of the Sales Agreement, the Plaintiff had ten days to inspect the aircraft, and the sale of the aircraft was conditioned upon this inspection. The aircraft was also subject to an inspection that was paid for by Defendant Elliott Aviation. The Sales Agreement contained a clause waiving all express and implied warranties related to the aircraft, stating:

> (3) THE AIRCRAFT IS A USED AIRCRAFT AND EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT SHALL BE DELIEVERED TO AND ACCEPTED BY PURCHASER IN AN "AS-IS" CONDITION, EXCEPT AS PROVIDED FOR IN THIS AGREEMENT. SELLER DISCLAIMS AND

> PURCHASER HEREBY WAIVES ALL WARRANTIES, GUARANTEES OR
> REPRESENTATIONS OF ANY KIND OR NATURE; EITHER EXPRESS OR
> IMPLIED, AS TO ANY MATTER WHATSOEVER ARISING BY LAW OR
> OTHERWISE WITH RESPECT TO THE AIRCRAFT INCLUDING,
> WITHOUT LIMITATION, ANY REPRESENTATION WITH RESPECT TO
> AIRWORTHINESS OR CONDITION OF THE AIRCRAFT, ANY
> OBLIGATION OR LIABILITY IN TORT, NEGLIGENCE OR WITH
> RESPECT TO FITNESS FOR A PARTICULAR PURPOSE,
> MERCHANTABILITY, LOSS OF USE OR PROFITS OR CONSEQUENTIAL
> DAMAGES AND ANY IMPLIED WARRANTY ARISING FROM COURSE
> OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE.

Under the terms of the Sales Agreement, Elliott Aviation also agreed to both refurbish the inside of the plane and repaint its exterior. On January 1, 2010, Plaintiff executed a certificate of acceptance for the aircraft.

In the year following Plaintiff's purchase of the aircraft, Plaintiff claims that he began to experience difficulties with the plane. [Dkt. No. 33 at ¶ 5]. These problems included a malfunctioning of the de-icing system in addition to in-flight malfunctions that caused the plane to be subject to excessive "rolling." After investigating these problems, Miller discovered that the plane was involved in a "crash" in 2007. Plaintiff claims that this information was contrary to the accounts he had been given by Elliott Aviation. *Id.* Plaintiff also alleges he discovered, at that time, that the interior work on the plane was flawed. [*Id.* at ¶ 6]. Plaintiff paid $30,000 to repair the aircraft and contacted Elliott Aviation. Plaintiff claims that Elliott Aviation would not reimburse him for the expenses. Plaintiff further contends that, if he had known about the nature of the damage the aircraft had sustained, he would not have purchased the aircraft.

III. STANDARD OF REVIEW

*A. Motion to Dismiss*

Federal Rule of Civil Procedure 8 requires that a complaint present "a short and plain statement of the claim showing that the pleader is entitled to relief."  The Court may only consider the matters contained within the pleadings.  *Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008). Documents attached to or incorporated within a complaint are considered part of the pleadings, and a court may look at such documents "for all purposes,"

3

including to determine whether a plaintiff has stated a plausible claim for relief. *Brown v. Medtronic, Inc.*, 628 F.3d 451, 459–60 (8th Cir. 2010) (citations omitted); *see also Sioux Biochemical, Inc. v. Cargill, Inc.*, 410 F. Supp. 2d 785, 791 (N.D. Iowa 2005) (considering underlying contractual agreements "as submitted by the parties in support of or resistance to [defendant's] motion to dismiss") (alteration added).   Typically, "on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). In the instant motion, the Court will rely on the Sales Agreement and the advertisement. Materials embraced by the pleadings include "documents whose contents are alleged in the complaint, and whose authenticity nobody questions, but which are not physically attached to the pleading." *Kushner v. Beverly Enters.,* 317 F.3d 820, 831 (8th Cir. 2003).   In this case, both documents are embraced by and physically attached to the pleading. This Court will treat the Motion to Dismiss as a 12(b)(6) motion to dismiss and not a motion for summary judgment.

To survive a 12(b)(6) motion, the claim "may be supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 563 (2007).   The complaint must also "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)); *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 716 (8th Cir. 2011) (quoting *Northstar Indus., Inc. v. Merrill Lynch & Co.*, 576 F.3d 827, 832 (8th Cir. 2009)).   While not a "probability requirement," the "plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a 'sheer possibility.'" *Id.*   To adequately state a claim, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also Zutz v. Nelson*, 601 F.3d 842, 848 (8th Cir. 2010) (citing *C.N. v. Willmar Pub. Sch., Indep. Sch. Dist. No. 347*, 591 F.3d 624, 629–30 (8th Cir. 2010)).   The allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).   As a result, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 663 (citing *Twombly*, 550 U.S. at 555).

4

When analyzing the adequacy of a complaint's allegations under Rule 12(b)(6), the Court must accept as true all of the complaint's factual allegations and view them in the light most favorable to the plaintiff.  *See Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) ("when ruling on a defendant's motion to dismiss, a judge must accept as true all of the factual allegations contained in the complaint" (citations omitted)).  The central question at the motion-to-dismiss stage "is not whether plaintiffs will ultimately prevail, but rather whether they are entitled to offer evidence in support of their claims."  *United States v. Aceto Agr. Chemicals Corp.*, 872 F.2d 1373, 1376 (8th Cir. 1989) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974), overruled on other grounds, *Davis v. Scherer*, 468 U.S. 183 (1984) (quotation marks omitted)).

To determine whether a claim meets the well-pleaded-complaint rule, it is important to consider the allegations in their entirety: "the complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible." *Braden*, 588 F.3d at 594 (citations omitted).  "Ultimately, evaluation of a complaint upon a motion to dismiss 'is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.* (citing *Iqbal*, 556 U.S. at 663).

When evaluating a motion to dismiss, the Court construes the complaint liberally and in the light that is most favorable to the non-moving party. *Eckert v. Titan Tire Corp.*, 514 F.3d 801, 806 (8th Cir. 2008).

### B. Pleading Requirements FRCP 9(b)

Federal Rule of Civil Procedure 9(b) requires that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). Under Rule 9(b), the party must provide the "who, what, when, where . . . and how" of the fraudulent conduct. *Great Plains Trust Co. V. Union Pac. R. R. Co.*, 492 F.3d 986, 995 (2007). The chief objective of a Rule 9(b) pleading is to provide the Defendant with the opportunity to respond to allegations of fraud and to prepare a defense. *Greenwood v. Dittmer*, 776 F.2d 785, 789 (8th Cir. 1985). In light of this objective, allegations that are simply conclusory fail to sufficiently plead fraud in accordance with the 9(b) standard. *In re Flight Trasnp. Corp. Sec. Litig.*, 593 F.Supp. 612, 620 (D. Minn. 1984).

When evaluating a motion to dismiss for failure to state a claim, the Court accepts as true all of the complaint's factual allegations and views them in the light most favorable to the plaintiff. *Pardus*, 551 U.S. at 94. However, the Court must determine whether the Plaintiff has stated a "claim for relief that is plausible on its face," or whether the Defendants are correct in their assertion that the paucity of facts result in allegations that do not rise "above the speculative level." *Braden*, 588 F.3d at 594; *Twombly*, 550 U.S. at 555. Assisting the Court in this undertaking are the documents that are necessarily embraced by the pleadings and can be considered in this motion. *See Porous Media*, 186 F.3d at 1079.

Complaints should be liberally construed and not dismissed "simply because the court is doubtful that the plaintiff will be able to prove all of the necessary factual allegations." *Young v. Principal Fin. Group, Inc.*, 547 F. Supp. 2d 965, 969 (S.D. Iowa 2008) (citations omitted).

III. ANALYSIS

A. BREACH OF CONTRACT

The Plaintiff's claims for breach of contract—specifically, breaches of express and implied warranties—fail because the contract is fully integrated and precludes actions of this nature. The breach-of-contract claim pertaining to the refurbishment of the aircraft survives the motion to dismiss. The implied-warranty claim does not state a claim upon which relief can be granted because it is waived by the terms of the contract. The express-warranty claims, on the other hand, fail to state a claim upon which relief can be granted because they are barred by the parol-evidence rule. Therefore, the only breach-of-contract claim that survives the motion to dismiss is the claim regarding the Defendant's improper refurbishment of the interior of the aircraft.

To reach these conclusions, the Court evaluates each breach-of-contract claim individually to determine whether the complaint states a claim upon which relief can be granted. The Court then evaluates whether such claims are barred as a matter of law by the integration clause and warranty waiver contained within the Sales Agreement.

Iowa courts have established a five-step test for evaluating breach-of-contract claims. Under Iowa law, to prove a breach-of-contract claim, the plaintiff must show:

(1) [T]he existence of a contract; (2) the terms and conditions of the contract; (3) that [the plaintiff] has performed all the terms and conditions required under the contract; (4) the defendant's breach of the contract in some

6

particular way; and (5) that plaintiff has suffered damages as a result of the breach.

*Ken v. Palmer College of Chiropractic*, 757 N.W.2d 651, 657–58 (Iowa 2008) (quoting *Molo Oil Co. V. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (internal quotation marks omitted)). Plaintiff's claims against Defendant Elliott Aviation for breach of contract fall into three categories: (1) breach of an implied warranty of merchantability; (2) breach of express warranties; and (3) breach of the explicit terms of the Sales Agreement.

In the present case, the parties Miller and Elliott Aviation contracted for the purchase of a private aircraft. The contract terms provided for the sale of the aircraft. Those terms are undisputed, and the contract is attached to the complaint. Elliott Aviation does not claim that Plaintiff failed to perform its duties under the contract. Plaintiff articulates three ways that Defendant has breached the contract and Plaintiff has claimed both economic and consequential damages as a result of that breach.

## I. BREACH OF IMPLIED WARRANTY

Miller alleges that Elliott Aviation has breached an implied warranty of merchantability and fitness for a particular purpose by misrepresenting the nature of the airplane's damage. Miller does not state a claim upon which relief can be granted because he disclaimed all implied warranties in the Sales Agreement and because the Plaintiff had the opportunity to inspect the aircraft.

Under Iowa law, an implied warranty of fitness for a particular purpose applies "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." Iowa Code § 554.2315. A warranty that products are merchantable "is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind." Iowa Code §554.2314. Under Iowa law, implied warranties of merchantability and fitness can be waived contractually. Iowa Code § 554.2316(2).

In the instant case, the implied warranty of merchantability was waived by the Plaintiff pursuant to the terms of the contract and as a result of the availability of an inspection of the aircraft. Iowa law provides: "when the buyer before entering into the contract has examined the goods or the sample or model as fully as the buyer has desired or refused to examine the goods there is no implied warranty with regard to defects which an examination ought in the circumstances have revealed to the buyer." Iowa Code § 554.2316(3)(b). Elliott Aviation paid for a pre-sale inspection of the aircraft. Plaintiff was provided with an opportunity to have his own expert examine the aircraft. Further, Plaintiff used the aircraft for a year. Because Plaintiff by his own actions has waived his ability to bring a breach-of-contract suit on the basis of an implied warranty, this claim is dismissed.

## II. BREACH OF EXPRESS WARRANTY

Miller's claims for breach of express warranty similarly do not survive the Motion to Dismiss because they have been waived by the Sales Agreement.

To establish breach of an express warranty under Iowa law, the Plaintiff must show: (1) that a warranty existed; (2) that the warranty was breached; and (3) that there is a causal link between the breach and the harm suffered by the Plaintiff. Iowa Code § 554.2313 (2001). Under Iowa law, express warranties can be created in three different ways:

> a. Any affirmation of fact or promise made by the seller to the buyer that relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.
> b. Any description of the goods that is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.
> c. Any sample or model that is made part of the basis of the bargain creates an express warranty that the whole of the goods shall conform to the same sample or model.

Iowa Code § 554.2313 (2001). Statements to purchasers made by sales representatives can create an express warranty: "[a]n express warranty may be created by any affirmation of fact or promise made by a seller which relates to the goods." *Tralon Corp. v. Cedarapids, Inc*, 966 F.Supp. 812, 825 (N.D. Iowa 1997). Iowa courts have held that statements create warranties when they "induce representation or affirmation of fact[s] given in such terms as to attain the status of a warranty." *Dailey v. Holiday Distrib. Corp.*, 151 N.W.2d 477, 484 (Iowa 1967).

8

In the present case, Miller identifies three express warranties Elliott Aviation breached: (1) the advertisement describing the aircraft damage as occurring in a static accident; (2) Elliott Aviation's representations that the plane suffered damage falling off a jack; and (3) the inclusion of the flight log in the Sales Agreement.

The Defendant argues that Plaintiff cannot succeed on any of these claims because the Sales Agreement contains a waiver of these warranties and, consequently, asserts that these claims should be barred as a matter of law.  Defendant argues that breach-of-contract claims are barred by the provision of the Sales Agreement waiving any available express or implied warranties. Additionally, Defendant argues that the Sales Agreement explicitly limits the types of damages and remedies available to the parties.  [Dkt. No. 32 at ¶ 5]. Likewise, Elliott Aviation asserts that the parol-evidence rule prohibits the introduction of evidence that could establish that an express warranty existed. Plaintiff, on the other hand, contends that extrinsic evidence is necessary to establish both whether express warranties were created by the Defendant, and whether such warranties were subject to the waiver in the Agreement. [Dkt. No. 5 at ¶ 17].

The Court applies the law of the state of Iowa to resolve this contract dispute.  As a preliminary matter, the Court must determine whether the Sales Agreement constitutes an integrated agreement. *Pickrell v. Schubert,* 734 N.W.2d 487 at *2 n.2 (Iowa App. 2007) (citing Restatement (Second) of Contracts § 209(2) (1981)) (holding that "[w]hether there is an integrated agreement is to be determined by the court as a question preliminary to determination of a question of interpretation or to application of the parol evidence rule.")  The Sales Agreement contains several clauses that pertain to this inquiry. The first clause is the section containing a waiver of express and implied warranties and waiver of any tort or negligence claims. This section states that the aircraft is being sold "as is," that the purchaser waives all express or implied warranties, and that any representations based on airworthiness or condition of the aircraft are not actionable:

> (3) THE AIRCRAFT IS A USED AIRCRAFT AND EXCEPT AS OTHERWISE PROVIDED IN THIS AGREEMENT SHALL BE DELIEVERED TO AND ACCEPTED BY PURCHASER IN AN "AS-IS" CONDITION, EXCEPT AS PROVIDED FOR IN THIS AGREEMENT. SELLER DISCLAIMS AND PURCHASER HEREBY WAIVES ALL WARRANTIES, GUARANTEES OR REPRESENTATIONS OF ANY KIND OR NATURE; EITHER EXPRESS OR IMPLIED, AS TO ANY MATTER WHATSOEVER ARISING BY LAW OR

9

OTHERWISE WITH RESPECT TO THE AIRCRAFT INCLUDING, WITHOUT LIMITATION, ANY REPRESENTATION WITH RESPECT TO AIRWORTHINESS OR CONDITION OF THE AIRCRAFT, ANY OBLIGATION OR LIABILITY IN TORT, NEGLIGENCE OR WITH RESPECT TO FITNESS FOR A PARTICULAR PURPOSE, MERCHANTABILITY, LOSS OF USE OR PROFITS OR CONSEQUENTIAL DAMAGES AND ANY IMPLIED WARRANTY ARISING FROM COURSE OF PERFORMANCE, COURSE OF DEALING OR USAGE OF TRADE.

[Dkt. No. 1–2 ¶ 6]. The Sales Agreement additionally contains two clauses that relate to the integration of the contract and its completeness:

(4) This Agreement is the only agreement controlling this purchase and sale, express and implied, either verbal or in writing and is binding on Purchaser and Seller their heirs, executors, administrators, successors and assigns

(8) This Agreement constitutes the entire agreement of the parties with respect to the transaction herein contemplated. This agreement supersedes any merges all prior agreements end understanding between the parties, both written and oral, and specifically supersedes all of the Seller's proposals to Purchaser prior to the date hereof. There are no verbal understandings, agreements, representations of warranties between the parties, which are not expressly herein set forth.

*Id.* These clauses—drafted between two sophisticated parties—are clear. The Sales Agreement contains an unambiguous integration clause. While it is true that "[t]he presence of an integration clause is one factor we take into account in determining whether an agreement is fully integrated," nothing in the Sales Agreement would tend to suggest that this contract is not fully integrated. Of particular importance in the present dispute, Iowa law provides that if "the court finds the writing to have been intended . . . as a complete and exclusive statement of the terms of the agreement," the agreement cannot be supplemented with evidence of additional terms. *Lenvin Leasing Co. v. Dickey Co*., 380 N.W.2d 748, 750 (Iowa Ct. App. 1985) (holding "[a] contract with an integration clause typically represents the complete agreement of the parties and any extrinsic evidence which varies, adds, or subtracts from its terms is barred by the parol evidence rule.") The Sales Agreement constitutes a fully integrated agreement.

If the agreement is fully integrated, the parol-evidence rule "prevents the receipt of any extrinsic evidence to contradict (or even supplement) the terms of the written agreement." *Whalen v. Connelly*, 545 N.W.2d 284, 290 (Iowa 1996) (citing Restatement (Second) of

Contracts § 213).   The parol-evidence rule does not prohibit evidence tending to show "the situation of the parties . . . attendant circumstances, and the objects they were striving to attain." *C & J Vantage Leasing Co. v. Wolfe*, 795 N.W.2d 65, 85 (Iowa 2011) (citing *Kroblin v. RDR Motels, Inc.*, 347 N.W.2d 430, 433 (Iowa 1984)).   Further, "[t]he parol evidence rule applies only to prior and contemporaneous matters; it does not bar evidence of subsequent negotiations to show modification of a written contract."   *Whalen*, 545 N.W.2d at 291 (citing *Baie v. Nordstrom*, 29 N.W.2d 211, 213 (Iowa 1947)).

To support this contention, Miller relies heavily on an Eighth Circuit decision, *Limited Flying Club,* 632 F.2d 51, 56–57 (8th Cir. 1980), another case arising out of the sale of a private aircraft. Miller contends that this case supports the proposition that a sales contract that includes waivers of warranties does not prohibit the purchaser from bringing a breach-of-contract suit. In *Limited Flying Club*, the Eighth Circuit held:

> that a writing intended by the parties as a final expression of their agreement with respect to such terms as are included therein may not be contradicted by evidence of any prior agreement or of a contemporaneous oral agreement but may be explained or supplemented . . . by evidence of consistent additional terms unless the court finds the writing to have been intended also as a complete and exclusive statement of the terms of the agreement.

*Id.* (citing Iowa Code § 554.2202). The waiver of express warranties contained in the contract is intended to be "a complete and exclusive statement of the terms of the agreement" and the introduction of any evidence of express warranties would be inconsistent with the terms of the Sales Agreement and would violate the parol-evidence rule.

In *Whalen*, the Iowa Supreme Court emphasized that the parties were sophisticated individuals who were represented by counsel and enjoyed comparable bargaining strength. *Id.* at 291. In the present dispute, both parties are sophisticated and enjoy comparable bargaining strength. The Plaintiff in the current dispute paid $50,000 for an expert to advise him in the transaction. As the Sales Agreement is fully integrated, Plaintiff cannot introduce extrinsic evidence to provide context and meaning to the intent of the parties and language of the Sales Agreement.

Next, the Court takes up the task of interpreting the language of the contract.   This undertaking amounts to "the process for determining the meaning of the words used by the

11

parties in a contract." *Pillsbury Co., Inc. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008) (citing *Fashion Fabrics of Iowa, Inc. v. Retail Investors Corp.*, 266 N.W.2d 22, 25 (Iowa 1978)). The process of contract interpretation does "not depend on a determination that there is an ambiguity," but determines what meanings are reasonably possible and chooses among those meanings. *Id.* at 436 (citations omitted).

The Court finds that the terms contained within this Sales Agreement are not ambiguous. The only terms of this contract that contain any ambiguity are the provisions that include terms regarding the "airworthiness" of the aircraft. However, in the breach-of-contract context, such claims are irrelevant where the contract contains an explicit waiver of implied and express warranties.

The Court finds that the Sales Agreement is a completely integrated agreement and, as a result, the parol-evidence rule bars introduction of evidence varying the terms of the contract. Consequently, Miller's claims that Elliott Aviation breached express or implied warranties fail to meet the plausibility requirement of Federal Rule of Civil Procedure 12(b)(6) and do not survive the Motion to Dismiss.

The pleadings fail to contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.  Plaintiff has failed to state a plausible claim upon which relief can be granted and Defendant's Motion to Dismiss is granted on the breach-of-contract claims concerning an express or implied warranty.

Miller further asserts that the warranty waiver is unconscionable and therefore cannot prohibit him from bringing a breach of contract claim. However, Plaintiff alleges no facts showing unconscionability in the contract. Applying Iowa law, courts have held that "[a] bargain is unconscionable 'if it is such as no man in his senses and not under delusion would make on the one hand, and as no honest and fair man would accept on the other.'" *All-Iowa Contracting Co. v. Linear Dynamics Inc*, 296 F. Supp. 2d 269, 280 (N.D. Iowa 2003) (citing *Smith v. Harrison*, 325 N.W.2d 92, 94 (Iowa 1982)). For purposes of determining whether a contract is unconscionable, the party claiming the invalidity of the contract must show that the contract is unjust and unreasonable on its face. *Matter of Estate of Ascherl*, 445 N.W.2d 391, 392 (Iowa 1989). Iowa Code permits a seller to waive an implied warranty of merchantability if the disclaimer: (1) mentions merchantability; and (2) is conspicuous. Iowa Code § 554.2316(2). In

12

the present dispute, the contract provision waiving warranties expressly mentions merchantability and is conspicuous—the waiver clearly articulates the purpose of the clause and is printed in the Sales Agreement with capitalized letters. Applying the parol-evidence rule to bar evidence of express warranties when an agreement includes a waiver is not unconscionable. *CDW Direct, LLC., v. BVS, Inc.*, 2013 WL 1290940 (N.D. Iowa 2013).

The contract provisions that waive breach-of-contract claims on the basis of express or implied warranties are not unconscionable.  They do not cause the agreement to be so unfair and unjust that no reasonable person would enter into such an agreement.

### III. BREACH OF THE TERMS OF THE SALES AGREEMENT—REPAIRS TO THE INTERIOR OF THE AIRCRAFT

The Plaintiff's final breach-of-contract claim alleges that Elliott Aviation violated the explicit terms of the agreement by repairing the interior of the aircraft in a negligent and incomplete manner. The Court holds that this allegation is the only breach-of-contract claim that is not dismissed at this stage of the proceedings.

As this Court has noted, in order to establish breach of contract under Iowa law, a plaintiff must prove:  (1) the existence of a contract; (2) the terms and conditions of that contract; (3) that plaintiff performed all the terms and conditions required by the contract; (4) that defendant breached the contract; and (5) that plaintiff suffered damages as a result of that breach. *Molo Oil Co. v. River City Ford Truck Sales, Inc.*, 578 N.W.2d 222, 224 (Iowa 1998) (citing *Iowa-Illinois Gas & Electric Co. v. Black & Veatch*, 479 N.W.2d 821, 825 (Iowa 1993)). Both parties stipulate that a contract existed between Miller and Elliott Aviation. Further, the terms and conditions of that contract are attached to the pleading. Defendants do not contest that Plaintiff failed to perform any of his responsibilities under the contract.

Under the Sales Agreement, Elliott Aviation was required to refurbish the interior of the aircraft. The Plaintiff's assertion that Elliott Aviation failed to adequately perform under the terms of the agreement meets the plausibility requirement of the well-pleaded-complaint rule. Miller contends that Elliott Aviation breached the explicit terms of the Sales Agreement by: (1) performing substandard work that damaged the interior of the plane; and (2) by failing to properly refurbish the interior of the plane as required by the Sales Agreement. [Dkt. No. 25 at ¶ 6].

13

The Sales Agreement explicitly required that Elliott Aviation pay for the refurbishment of the interior of the aircraft, and that such repairs meet the purchaser's specifications:

> Both parties agree to the following:
> 3. Refurbishment of the interior paid for by Elliott Aviation to include: Headliner, lower sidewells, seat leather and table top inserts. Will be cleaned, detailed and re-dyed to the existing color. All wood will be sanded and refinished with a high gloss polyurethane finish. All plating will be cleaned. Carpets, window panel material and upper accent of the panel of the lower sidewalls will be new to customer specifications.

[Dkt. No. 1–2]. This breach-of-contract claim has been pleaded with sufficient detail to survive the Defendant's Motion to Dismiss.

Defendant further contends that the Plaintiff's breach-of-contract claim regarding the refurbishments should be dismissed because it seeks to recover damages that are precluded by the Sales Agreement. This Court, however, finds that such a determination is improper at the motion-to-dismiss stage because it is ultimately a question dealing with classifying damages and evaluating appropriate remedies: "[t]he question whether a plaintiff has stated a claim turns not on whether he has asked for the proper remedy but whether he is entitled to any remedy." *City of Los Angeles v. Lyons*, 461 U.S. 95, 131 (1983).

Classifying the type and nature of damages amounts to an evaluation regarding the form of relief and is not a "claim" that is subject to a Rule 12(b)(6) motion to dismiss. *Security Nat. Bank of Sioux City, Iowa v. Abbott Labs*, 20112 WL 327863 (N.D. Iowa Feb. 1, 2012) ("punitive damages are not a cause of action, and as such . . . they are not subject to a motion to dismiss.") Specifically, "[t]he demand [for relief] is not itself a part of the plaintiff's claim . . . and so failure to specify relief to which the plaintiff was entitled would not warrant dismissal under Rule 12(b)(6)." *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002).

Defendant alleges that the damages claimed as part of the interior refurbishment of the aircraft are categorized as consequential damages, and are therefore prohibited by the Sales Agreement. The Defendant argues that, under Iowa law, consequential damages can be waived contractually. *Optimal Interiors, LLC. v. HON Co.*, 774 F.Supp. 2d 993 (S.D. Iowa 2011). The present dispute is readily distinguishable from *Optimal Interiors* because the court in *Optimal*

14

was dealing with a motion for summary judgment and not a motion to dismiss for failure to state a claim.

To determine if such a claim survives the Motion to Dismiss, the Court only needs to decide if any remedy is available under Iowa law for breach of express contract terms. Even if this Court finds that the damages are limited by the terms of the contract, the contract still allows for some form of recovery. As a result, this Court holds that the provision limiting the type of damages in the Sales Agreement has no effect on the claims at the motion-to-dismiss stage.

## C. FRAUDULENT MISREPRESENTATION

The Court holds that Miller's fraudulent misrepresentation claim survives Elliott Aviation's Motion to Dismiss because the Plaintiff could show that representations made by Elliott Aviation fraudulently induced him to enter into the Sales Agreement.

This Court has held that in order to establish a claim for fraudulent misrepresentation, a plaintiff must prove: "(1) [the] defendant made a representation to the plaintiff, (2) the representation was false, (3) the representation was material, (4) the defendant knew the representation was false, (5) the defendant intended to deceive the plaintiff, (6) the plaintiff acted in [justifiable] reliance on the truth of the representation . . . (7) the representation was a proximate cause of [the] plaintiff's damages, and [8] the amount of damages." *Pool v. Orkin*, 2010 WL 5452712 (S.D. Iowa) (citing *Spreitzer v. Hawkeye State Bank*, 779 N.W. 2d 726, 735 (Iowa 2009).

In the present case, Plaintiff alleges that Elliott Aviation made several representations about the aircraft to the Plaintiff and that these representations were false. Plaintiff further contends that, had Elliott Aviation not made these representations, the Plaintiff would not have purchased the aircraft. Miller further asserts that Elliott Aviation knew or should have known that the details regarding the plane crash were false, and that Elliott Aviation made these representations in an attempt to get the Plaintiff to purchase the aircraft. The Plaintiff contends he relied on these representations and purchased the aircraft. The Plaintiff claims he has suffered damages because of that reliance. These allegations sufficiently articulate the "who, what, when, where and how" of the alleged fraud. *Mitec Partners , LLC v. U.S. Bank Nat. Ass'n*, 605 F.3d 617, 622 (8th Cir. 2010) (citing *Drobnak v. Andersen Corp.*, 561 F.3d 778, 783 (8th Cir. 2009)).

Miller identifies Elliott Aviation's employees as the individuals who made both the representations in the advertisement and during the sales pitch, satisfying the "who" requirement of Rule 9(b). The complaint contains information about the "what" component, with its description of the alleged fraudulent representations describing that the plane's damage occurred while the plane was "static." [Dkt. No. 25 at ¶ 7]. Furthermore, the complaint contains enough information to determine the "when and where" of these representations—Miller states that these representations were provided to him in 2009. Miller is also able to meet the last requirement of the particularity standard—the how—by describing the medium through which these statements were communicated: an advertisement and employee representations. Thus, Miller states a claim for fraudulent misrepresentation that survives a motion to dismiss for failure to state the claim.

The Defendant argues that, to meet this standard, the Plaintiff must show that the representation of the accident as "static" was material. This Court declines to impose such a standard on parties at the motion-to-dismiss stage. The Court only requires a plaintiff to establish that the claim could be material. The primary goal of Rule 9(b) is to provide the Defendant with the opportunity to respond to allegations of fraud and to prepare a defense. *Greenwood*, 776 F.2d at 789. This does not require a plaintiff to establish materiality in a pleading.

Defendant further contends that the Plaintiff has failed to establish that Elliott Aviation owed any kind of duty to the Plaintiff. However, even in an arm's-length transaction, misleading partial disclosures may constitute affirmative fraud and fraudulent concealment. *Marvin Lumber and Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 877 (8th Cir. 2000). The Court cannot say as a matter of law, that the Plaintiff cannot make out a fraud claim.

Additionally, Defendant claims that the integration clause contained in the Sales Agreement bars the Plaintiff from stating a claim on which relief can be granted for fraudulent inducement. The Court declines to address whether any of the tort claims violate the economic-loss rule, as the Defendant has not raised this issue with the Court. Elliott Aviation's Motion to Dismiss regarding fraudulent misrepresentation is denied because the Plaintiff could establish that he was induced into entering the agreement by fraudulent misstatements.

The Iowa Supreme Court has found that certain assurances or representations are not subject to an integration agreement in a written contract. *Robinson v. Perpetual Services Corp.* 412 N.W. 2d 562, 565 (Iowa 1987). Notably, "where there is evidence of fraudulent

misrepresentation in the inception of a contract such misrepresentations can be the basis for [and] action for damages, despite the limiting provisions of the contract." *Id.* (citing, *Hall v. Crow*, 34 N.W.2d 195, 199 (1948)). The standard articulated by the Iowa Supreme Court, however, has been clarified in a later case involving misrepresentations and integration clauses. *Whalen v. Connelly.*, 545 N.W. 2d 284 (Iowa 1996). In *Whalen*, the Iowa Supreme Court found that an integrated contract prevented the plaintiff from establishing fraud:

> [A]ll of the alleged representations involved matters that were specifically addressed in the integrated written partnership agreements and corresponding letter agreements. Although we have allowed fraudulent inducement claims to proceed despite an integration clause in a contract, we have done so only with regard to misrepresentations concerning facts or circumstances not included in the written contract.

*Whalen v. Connelly*, 545 N.W. 2d at 284.

When evaluating Iowa law, courts have routinely held that: "[w]hen a 'fine-print, boiler-plate' integration clause 'was not intended to encompass' the fraudulent misrepresentations or omissions at issue, then the integration clause does not bar the fraud claims." *McIrvin v. West Side Unlimited Corp.*, 2010 WL 605651 (N.D. Iowa 2010) (*citing Robinson*, 412 N.W. 2d at 567). In the present case, there is no indication that the Sales Agreement specifically addresses past damage to the aircraft. The assurances the Defendant allegedly made relating to a crash of the aircraft are not specifically addressed by provisions of the contract providing for general airworthiness. When a contract does not address a specific condition or include explicit integration of a past statement alleged to be a fraudulent misrepresentation, a question of fact remains regarding whether or not such a statement is encompassed by the terms of the contract. *Jones Distributing Co., Inc. v. White Consolidated Industries*, 943 F. Supp. 1445, 1471 (N.D. Iowa 1996) (holding that a jury question remained concerning whether a contracts provisions were specific enough to encompass fraudulent representations:  "[u]nlike the matters at issue in *Whalen*, which had been the subject of specific provisions of the contract, the assurances of a continuing relationship are not specifically undermined by provisions of the contract providing for termination for cause, or even by provisions providing for termination without cause, where the contract does not otherwise provide for a specific duration.")

17

Both parties contend that the integration issue is controlled by two distinct Eighth Circuit decisions evaluating fraudulent misrepresentations under Iowa law. Plaintiff claims the instant case is comparable to *Northwest Bank & Trust Co. v. First Ill. Nat'l Bank*. 354 F.3d 721, 726 (8th Cir. 2003). On the other hand, Defendant Elliott Aviation asserts that the present dispute is more analogous to a subsequent decision regarding fraudulent misrepresentation in Iowa, *Mitec Partners, LLC. v. U.S. Bank Nat'l Ass'n*. 605 F.3d 617 (8th Cir. 2010).

*Northwest Bank* involved a dispute over a loan-participation agreement between two banks, Northwest and FINB. FINB proposed that Northwest make a loan to an entity owned by an individual who was suffering from cash-flow problems. In order to evaluate this proposal, Northwest requested that FINB provide it with information about the financial status of all of the corporate entities owned by the individual. FINB provided Northwest with a report that was three-years old and that Northwest contended contained factual errors and misrepresentations. After viewing this allegedly misleading material, Northwest executed an agreement, loaning $1.3 million to the individual. The individual declared bankruptcy soon after and stopped making loan payments. The Eighth Circuit upheld the grant of summary judgment against FINB for breach of contract, breach of fiduciary duty, fraudulent conveyance, and unjust enrichment and overturned the grant of summary judgment in favor of FINB on fraudulent misrepresentation. In doing so, the court noted that claims of fraudulent misrepresentation can be made even when there is an integrated sales agreement: "the rule is premised on the principle that the fraudulent inducement precedes the formation of the contract, and that to give preclusive effect to language contained therein would allow a party to bind the defrauded party to the contract through the use of a boilerplate disclaimer." *Northwest Bank*, 354 F.3d at 726 (8th Cir. 2003) (citing *Hall*, 34 N.W.2d at 199).

In *Mitec*, a group of investors formed an LLC (Mitec) to purchase a secured loan in default from U.S. Bank, with the intent to purchase a company's assets in foreclosure and rid the company of other investors. Mitec was successful in purchasing the loans. However, following the purchase, Mitec found that two of the loans were subject to lienholder agreements with the Small Business Administration. U.S. Bank had no knowledge of the lienholder agreement, and no one from Mitec ever inquired about any liens on the loan. The liens were available through a search of the public records. The contract between Mitec and U.S. Bank noted in relevant part:

18

4. Disclaimer of Representations and Warranties . . . [U.S.] Bank (a) makes no warranty or representation and shall not be responsible for any statement, warranty or representation made in or in connection with the Loan Documents . . . and (c) makes no warranty or representation and shall not be responsible for the . . . Enforceability . . . or collectability of the Loan Documents . . . .

5. Representations by Buyer. The Buyer hereby acknowledges that it has, independently and without reliance on . . . information provided by the Borrower [Mitec] and such other documents and information as the Buyer has deemed appropriate, made the Buyer's own credit analysis and decision to enter into this Assignment Agreement. The Buyer also acknowledges that it has reviewed and examined the Loan Documents and such related documents as it deemed appropriate.

*Mitec Partners, LLC*, 605 F.3d at 617. The district court granted summary judgment for U.S. Bank on all claims, including fraudulent misrepresentation. The Eighth Circuit upheld the district court, finding that Mitec could not establish reliance on U.S. Bank's claims because the contract between the two parties included a clause stating that Mitec's decision to enter into the agreement was based solely on its own investigation and not on any statements made by U.S. Bank. The decision emphasized that, generally, disclaimers in contracts do not bar a plaintiff from asserting a claim on the basis of fraudulent inducement, but distinguished the agreement in *Mitec* because: "[t]he alleged fraudulent misrepresentation was made in a document that was itself subject to a subsequent, integrated contract that contained multiple, unambiguous disclaimers. Even in the case of alleged oral misrepresentations . . . 'reliance on [an] oral representation . . . can be utterly unjustified in the face of a clear written contradiction.'" *Id.* at 623–24. (citing *Spreitzer*, 779 N.W. 2d at 737–38).

The present case can be distinguished from *Mitec*: (1) the plaintiffs in *Mitec* failed to identify any specific representations made by the bank that they relied upon; (2) the plaintiffs in *Mitec* initiated the transaction themselves and thus could not claim that fraudulent statements induced them to enter into the transaction; (3) the plaintiffs in *Mitec* had access to business records that would have easily revealed the information they claim was fraudulently concealed; and (4) the contract in *Mitec* disclaimed and specifically referenced the alleged fraudulent misrepresentation and stated that the parties had relied upon their own investigation. The Court agrees with the Plaintiff that the present case is more analogous to the dispute in *Northwest*,

where the plaintiffs claimed that the defendants relayed fraudulent statements to them that induced them to enter into a contract, and those specific fraudulent statements were not addressed by the terms of the contract. Consequently, the Court finds that the claim of fraudulent misrepresentation survives the Motion to Dismiss.

Defendant contends that allowing the Plaintiff's claim of fraudulent misrepresentation to survive the motion-to-dismiss stage would violate the function of the parol-evidence rule. This Court disagrees. Such a determination does not undermine the parol-evidence rule for multiple reasons. First, the parol-evidence rule is a doctrine that is primarily concerned with contract law and not the law of torts. Second, the final written agreement is still paramount for proving fraudulent misrepresentation. For example, the Court notes that provisions of the Sales Agreement will make it difficult for Miller to prove that the representations were material or that the Plaintiff justifiably relied on such claims because he waived any express or implied warranties in the Sales Agreement. The Court declines to fully evaluate these issues at this early stage in the litigation, but notes simply that the importance of the written agreement is not eliminated by allowing these claims to proceed.

Further, in *Pinkin v. Frank*, 704 F.2d 1019, 1022 (8th Cir. 1983), the Eighth Circuit applied Missouri law and held that the parol-evidence rule should not be applied to prevent the introduction of evidence that suggests fraudulent inducement:

> [T]he fraudulent inducement exception to the parol evidence rule is not rendered inapplicable by a contract merger provision that all agreements between the parties are contained therein or a provision that no verbal agreement affecting the validity of the written contract will be recognized . . . the parol evidence rule was designed to prevent frauds, not to promote frauds by immunizing a party from claims arising out of his fraudulent misrepresentations . . . it would indeed be ironic if this court were to blindly apply a fraud preventing doctrine—the parol evidence rule—where the effect would be to permit [the defendant] to enforce an agreement as written when he has orally agreed not to do so and [the plaintiff] has relied on that oral agreement . . . we simply cannot accept the proposition that the parol evidence rule was designed to foreclose a showing of fraud by preventing the admission of oral misrepresentations contradicting the terms of the written contract.

*Id.* The Court finds that the Plaintiff can articulate a viable fraudulent-misrepresentation theory on the basis that the integration clause was not specific enough to encompass the

20

representations. Alternatively, the Plaintiff could show that these statements were made to induce the Plaintiff to enter the Sales Agreement. At this stage of the proceedings, the present case can be distinguished from both *Whalen* and *Mitec* because the representations or assurances were not expressly addressed in the final integrated agreement.

### D. IOWA CONSUMER FRAUD ACT

Miller also alleges that Elliott Aviation violated the Iowa Consumer Fraud Act ("ICFA"). The Court determines that this claim has been pleaded sufficiently and denies Defendant's Motion to Dismiss on this matter. In order to sufficiently plead a claim of fraud, the plaintiff must meet the additional requirements articulated in Federal Rule of Civil Procedure 9(b). Rule 9(b) requires circumstances constituting fraud to be plead with particularity. Fed. R. Civ. P. 9(b). Defendant argues that claims pleaded on information and belief do not meet Rule 9(b)'s particularity requirement. [Dkt. No. ¶ 32]. However, when the facts constituting fraud are particularly within the opposing party's knowledge, such allegations may be pleaded on information and belief. *Fla. State Bd. of Admin. v. Green Tree Fin. Corp.*, 270 F.3d 645, 688 (8th Cir. 2001).

When evaluating a Rule 9(b) motion, the Court "accept[s] as true the factual allegations contained in the complaint and draws reasonable inferences in favor of the nonmoving party." *Drobnak*, 561 F.3d at 781.  To satisfy this standard of particularity, the complaint must allege "such matters as the time, place, and contents of false representations, as well as the identity of the person making the misrepresentation and what was obtained or given up thereby." *Schaller Tel. Co. v. Golden Sky Sys., Inc.*, 298 F.3d 736, 746 (8th Cir. 2002). Under Rule 9(b), the party must provide the "who, what, when, where . . . and how" of the fraudulent conduct. *Great Plains Trust Co. V. Union Pac. R. R. Co.* , 492 F.3d 986, 995 (8th Cir. 2007) (quoting *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990), cert. denied, 498 U.S. 941, (1990)). Under this standard, a pleading meets the peculiarity requirement if the pleading articulates the facts on which the fraudulent conduct is premised: "Rule 9(b) is deemed satisfied if the allegations are accompanied by a statement of facts on which the belief is founded . . . Rule 9(b) may be satisfied 'if the pleader identifies the available information on which the allegation of fraud is founded, as well as the efforts made to obtain additional information.'" *Drobnak*, 561 F.3d at

781 (citing *Fla. State. Bd. of Admin.*, 270 F.3d at 668; *Moore's Federal Practice* Sec. 9.03[1][g]).

The ICFA allows for relief on the basis of a misrepresentation or an omitted material fact 'with the intent that others rely upon the . . . omission.' Iowa Code § 714.16(2)(a). The ICFA provides that:

> [A] person shall not engage in a practice or act the person knows or reasonably should know is an unfair practice, deception, fraud, false pretense, or false promise, or the misrepresentation, concealment, suppression, or omission of material fact, with the intent that others rely upon the unfair practice, deception, fraud, false pretense, false promise, misrepresentation, concealment, suppression, or omission in connection with the advertisement, sale, or lease of consumer merchandise, or the solicitation of contributions for a charitable purpose . . . a claimant alleging an unfair practice, deception, fraud, false pretense, false promise, or misrepresentation must prove that the prohibited practice related to material fact or facts.

Iowa Code § 714(H)(3). Iowa courts have held that the ICFA does not function as a "codification of common law fraud principles." *State ex rel. Miller v. Hydro Mag, Ltd.*, 436 N.W.2d 617, 622 (Iowa 1989).

Miller contends that Elliott Aviation ran afoul of the IFCA when the company made representations about the nature of the damage that the airplane suffered. Miller asserts that the representations made by Elliott Aviation's employees and the statements in its advertisement constitute misrepresentations of material fact. Plaintiff could show that these representations were made with the intent that others rely upon such a statement. Miller also claims that these representations were made in connection with the advertisement and sale of consumer merchandise.

Defendant asserts that the representations regarding the aircraft were not material and thus Plaintiff has failed to state a claim under the ICFA. Questions regarding the materiality of facts are generally considered issues of fact. An inquiry regarding materiality may be properly decided on a motion for summary judgment. However, it is inappropriate for the Court to resolve such an issue at the motion-to-dismiss stage. To satisfy the requirements of the well-pleaded-complaint rule, it is enough that the Plaintiff contends that he relied upon the representations to make the purchase.

Moreover, the Court finds that, even if evaluation of materiality is appropriate at the motion-to-dismiss stage, the Plaintiff has adequately established that the representations alleged could be material. A fact is material if it relays information to consumers that is likely to affect their choice of product or impact their conduct relating to the product. *State ex. rel. Miller v. Vertrue, Inc.*, 834 N.W.2d 12, 34 (Iowa 2013). Miller could establish that the representations made regarding the damage to the airplane impacted his decision to purchase the aircraft; thus, these representations may be material.

Defendant contends that the Plaintiff's claim should be dismissed under the IFCA because Miller fails to show that he has purchased "consumer merchandise" under the meaning of the Act. The Court holds that neither the Rule 12(b)(6) standard nor the Rule 9(b) standard require pleadings to be detailed to this degree. Defendant asserts that "[c]onsumer goods are defined as "goods that are used or bought for use primarily for personal, family, or household purposes." [Dkt. No. ¶ 34.] As long as the party articulates a set of facts on which relief could be granted and pleads the fraudulent conduct with particularity, the claim is sufficient under Rule 12(6)(b) and Rule 9(b).

### E. COMMON-LAW FRAUD

Plaintiff's claims for fraud under Iowa common law also survive the Motion to Dismiss. In order to establish common-law fraud under Iowa law, a plaintiff must establish: "(1) a material misrepresentation (2) made knowingly (scienter) (3) with the intent to induce the plaintiff to act or refrain from acting, (4) upon which the plaintiff justifiably relies (5) with damages." *Beck v. Kapalis*, 302 N.W.2d 90, 94 (Iowa 1981). If a plaintiff establishes fraudulent misrepresentation in Iowa then they have also met the elements of common-law fraud in Iowa. *McLeodUSA Telecomm. Servs., Inc. v. Qwest Corp.*, 469 F.Supp.2d 677, 707 (N.D. Iowa 2007). Because this Court has already determined that the claim for fraudulent misrepresentation— which requires the additional element of duty—survives the Motion to Dismiss, the common-law fraud claim also survives the Motion to Dismiss for the reasons set forth above.

### F. MUTUAL MISTAKE & RESCISSION

Plaintiff also articulates a claim for equitable relief, requesting that the Court find that the Sales Agreement was the byproduct of a mutual mistake and rescind the agreement. Courts are permitted to provide equitable relief in Iowa to avoid the consequences of a mutual mistake of

fact in a contractual agreement. *H.R. Lubben Co. v. Coinmarch Corp.*, No. C99-156 MJM, 2000 WL 34030849, *6 (N.D. Iowa Dec. 26, 2000) (citing *Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa App. 1998)). Such relief is proper only when the mistake is one regarding a basic assumption on which the contract was made at the time the contract was signed. *Id.* (citing Restatement (Second) of Contracts Sec. 152 (1981)).

Iowa courts generally have held that mutual mistake materializes in contracts where the parties reach an agreement but the contract fails to reflect the agreement that the parties reached. *Schuknecht v. W. Mut. Ins. Co.,* 203 N.W.2d 605, 608 (Iowa 1973).

In the event that a court finds that the contract does reflect a mutual mistake, the contract will be voidable to the party that is adversely affected by the error unless that party bears the risk of the mistake. *Department of Human Servs. ex rel. Palmer v. Unisys Corp.,* 637 N.W. 2d 142, 150 (Iowa 2001). To determine if the party bears the risk of mistake, courts apply a three-part test. Under this test, a party shoulders the risk of a contract when: "'(a) the risk is allocated to him by agreement of the parties, or (b) he is aware, at the time the contract is made that he has only limited knowledge with respect to the facts to which the mistake relates but treats his limited knowledge as sufficient, or (c) the risk is allocated to him by the court on the ground that it is reasonable in circumstances to do so.'" *Davenport Bank & Trust Co. v. State. Cent. Bank*, 485 N.W. 2d 476, 480 (Iowa 1992).

Rescission is also appropriate when one of the parties to the contract has engaged in fraud or some other type of inequitable conduct. *Gouge v. McNamara*, 586 N.W.2d 710, 713 (Iowa App. 1988). A remedy in equity will be available to the party if they can prove that they would recover in an action for fraud and that the contract between the parties fails to "express the true agreement between the parties." *Id.* (citing, *Sioux County State Bank v. Veenstra*, 372 N.W.2d 309, 312 (Iowa App. 1985).

As discussed above, Miller has sufficiently pled a claim for fraud under Iowa law. On that basis, Miller can also state a claim for relief in equity.

## IV. DISPOSITION

The Court finds that, pursuant to the 12(b)(6) standards of a motion to dismiss, Miller fails to state a claim on which relief can be granted on all of his breach-of-contract claims except for his claim regarding the refurbishment of the aircraft. Additionally, the Court finds that Miller

alleges sufficient detail and states a claim upon which relief can be granted on the fraudulent-misrepresentation claim, the common-law-fraud claim, the ICFA claim, and the equitable-relief claim.

Upon the foregoing,

**IT IS ORDERED** that the motion to dismiss [32] is granted in part and denied in part as set forth in the text above.

**DATED** this 31st day of March, 2014.

JOHN A. JARVEY
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF IOWA